OPINION of the Court, by.
Ch. J. Boyle.
This is a com. st for land claimed by the parties under eon-flitung titles. The appellees, who were defendants in the court below, are in possession, and hold the elder grants, but have the junior entries ; so that the controversy depends upon the appellant’s claim. He asserts his right to the land in dispute under the following entry, made September the 9th 1780, viz: “Leven Pow-el withdraws his entry of 1000 acres that joins Hite on Ft rn cre ek, also his entry of 1000 acres two or three miles from the mouth of Mill creek, and locates 2000 acres on Marrad'» salt lick creek, running into the Ohio about sixteen miles above the Scioto, and about twenty tiaies up the said creek from the mouth, to begin at a white oak tree on the west side of the creek, about half *142 a «life above a salt lick on the same side of the creek*, and to run from thence east and west until it strikes the knobs each side of the cretk, thence down the creek, winding with the knobs, for quantity, so as to include, the said lick and two trees, one marked H and the other IS, and a small improvement of deadened trees, ”
Identity & no-tpriecy neceffa-ry to a good ie* ttciaa*
€i About fis*. teen miles a~ hove the Scio-to/* ought perhaps to be applied to Big Scioto* rather than to Little Scioto.
It is a sound and well settled principle, that notoriety as well as identity in the objects called for in an entry is necessary to its validity. If the particular objects which give location to an entry be not in themselves ijotorious, they must be described with reasonable certainty by reference to those that are notorious ; for it is ⅝ self evident truth, that a knowledge of that which is unknown can be communicated only through the medium of that which is known.
It has not been asserted, nor can it be pretended, that the locative calls of the entry in question (if identified) were, at the time of making the location, sufficiently notorious to enable a subsequent locator, without the aid of the general calls of description, to find and avoid the land intended to be appropriated by it. The general description, therefore, given in this entry, is essential to its validity ; and whether it leads with reasonable certainty to the particular objects of location, becomes material to be ascertained. A. subsequent locator, in search of the land intended to be appropriated by this entry, is required by the description given of it to commence his inquiry at the mouth of Scioto. At the very thresh*, iqold of his search he is met with a difficulty.
There are two streams of the name of Scivto, which qmpty into the Ohio, at some distance from, each other. Both of these streams.are proven to have been equally well known by their respective names of Big Scioto and Little Scioto, The call in the entry for “ the Scioto,” leaves, it in some measure uncertain.which,was intended, and there is no proof in the cause that tends to remove @r explain this ambiguity. It is, only from the namrfs of these streams that we can infer that their relative magnitude is such as t@ give to Big Scioto a preeminence which, would justify a presumption that the call was applicable to it, and not to Little Scioto. This however would be presuming considerably in favor of the entry, and although, with.this presumption in its favor, the uncertainty in this part of the description would *143 #ot be fatally defective, yet it must be acknowledged that it tends to weaken the strength of the claim.
The dh&ance to be taken on the Ohio, by the meanders* and not on ⅞ direct line.
Cali fordiftaa*. ces to be un« detftood accor* ding to the u« fual mode of travelling fronfc one object to nother,
Tó omit t® call for a ftream by its appropriate name, and fubftitute therefor an inaccurate' description by reference to & diftance of %o miles on th& Ohio, is a fatal objection to aft entry — Accord. Ccmcbman *vs, Abatías, Barda *6i- — Rapan ví. Arnold, 113 « — Helm's burs •vs. Qraig9 il⅞⅜
Rut no sooner would the subsequent adventurer have surmounted this difficulty, than he would be compelled to encounter others more formidable»
The stream on which the location is made, is described as “ running into the Ohio about 16 miles above the Scioto.” The’silence of the entry as to the mode of estimating the distance, leaves it tobe determined by construction. In a case of this kind, where the distance is given between two points on the Ohio, we cannot doubt that it ought to be estimated according to the meanders of the stream. The language *f an entry ought to be understood according to the popular acceptation at the time when the entry was made. Wherever there was an usual way of travelling from one object to another* the distance when spoken of was always in common parlance understood according to the accustomed way of travelling. Such it is believed is the popular mode of estimating distances at this day, and we know of no change which in this respect has taken place ih the language of the country. As the Ohio is the usual way of passing from one point on it to another, and was at an early day the great highway of coming to that part of this country, the distance in this call ought, according to the rule just laid down, to be computed according to the meanders of the stream, and not in a direct line. When the adventurer whom we suppose to be in search of this location had followed the Ohio for 16 miles, the distance called for in the entry, he would not be within less than four miles of the stream which is claimed as the one upon which the location was made. Before he would reach the end of these four miles, it would not be absurd or irrational for him to conclude that the locator had been mistaken in supposing the existence of the stream called for, and under this idea cease to prosecute bis search. But if he should persevere to the end of the remaining four miles, he would find, not Harrad’s Salt Lick creek, as is called for in the entry, but a stream that never bore that name ; a stream which has always been known, from long anterior to the time of making che entry until the present period, by the name of Little Sandy ¡ a stream proven to be navigable for near a hun-4red miles by its windings from ite mouth* and of a size *144 considerably above that which in: the common meaning* of the language of the country ought to receive the denomination of a creek.
mfiequhsi to b$e the beft poffibk des Sn’oot' be deiufive — Vol. 1,631, rule 3.
Qiiere, «4e. ikcrthediftance Aouid^be*^-fcftood by the TOeajuters, or t e nesreñ |>r*ct!cabl§ soute*
It never has been exacted of a locator that he should use best possible description of an object, but it has always been required that the description given should |3e substantially true, and not fallacious or delusive. Here Little Sandy (if indeed Little Sandv were meant to be indicated bv this description) is called hv a false name . is described ás a creek, wlierí in itci it h a navigable river, and Is pointed out by a distance whicn does not conduct the inquirer within less than four m;les of it. From such premises, were the subsequent locator to reason correctly, he would never arrive at the conclusion that Little Sandy was the stream intended to be described by this locution, it mav he here remarked, that Little Sandy was, at the time of making this entry, as well known as Rig Scioto, and would have been as easily found by a call for it bv its proper name. To describe it by reference to the Scioto, could not make it more known, though it might render it more obs> ure. Not only so, but to substitute instead of a well known name that would have conducted the inquirer directly to the object, a circuitous description which would require him to explore the banks of the Ohio for twenty-miles in extent, would impose upon him so much unnecessary labor, that were the description correct, it would present the entry in a very questionable aspect. But when we add to this consideration the fallacy and delu-siveness of the description, the location seems to present difficulties too great to be surmounted by reasonable ex* ertions.
In the next general call, the inquirer in search of this location, instead of finding the former difficulties removeA would discover new embarrassments to perplex him. The location is made about twenty miles up the said Cfeej¡ jrom the mouth.
-pn¡s [⅛<; that for a distance on the Ohio, is not explicit as to the mode of computing it. But the stream, though like the Ohio navigable, is not like it impassible, except occasionally ; and a person tr, passing front one point on it to another, is not necessarily confined tb the windings of the Stream* A direct lute, however? would be impracticable to travel? ar.d use out It but of *145 the question as being a way in which a call of this kind would never fee understood by any one. But whether the distance ought in this case to be computed accord* ing to the meanders of the streatfa, or the most practica» ble route by land, Is doubtful, because it does not clearly appear what was the usual way of travelling up and down it. Bat neither of these modes of estimating the distance would relieve the inquirer in search of this location from difficulty and embarrassment. If he should pursue the stream by its windings, at the end of twenty miles he would not be more than half the distance to the lick claimed as the one called for in the location, which is about forty miles from the mouth by the meanders.
After assa^ . Mining diftance san" then"»®1 «arch front 'éen'm'iea^r anobfeuretkk' « unreasonable t*IliSencc«
Marks aud« trr?J- 10 ttá and ever-gmvn, before them in'5780^ cannot uphold the entry.
*145 The distance, if to be estimated according to the most practicable route, will be found, taking the present road as the evidence of such route, from twenty-four to twenty-seven miles. If, at the end of twenty miles, the adventurer should commence his'search for the lick, he would have as much reason to direct his examination down the stream as up it, and he might thus be compelled to explore the stream at least from eight to fourteen miles, before he could find the lick. Whether, therefore, the distance is to be estimated by the meanders or the most practicable route, this part of the description would not dead the subsequent adventurer so near the location as to enable him to find it, without exertions unreasonably great, unless indeed the locative objects called for possessed some very distinguishing ckaractcristic marks, which would attract the attention. We will therefore pass on to the examination of the locative calls.
Upon this part of the Subject there ⅛ some apparent contrariety of evidence, and much argument was used by the counsel on each side to discredit the adverse witness? s, The characters bf the witnesses however áre not impeached ⅛ a manner to destroy their credit, and the material facts proven on both sides seem, when properly understood, to be reconcileable to ea'ch other.
The locative calls necessary to be considered, are, “ a salt liek on the same side (the west side) of the creek” — ⅛ '*• two trees, the one marked H. the other I. $.** and u ¿r smull improvement of deadened trees'*
it appears that in 1773 the letters I. tí. and I. S. were nv.arked upon two trees with gun powder* anti *146 itses cut round or girdled, with a view of deadening them at the lick claimed as the one called for. The let-I t ters are not proven ever afterwards to nave been sees, and from the nature of things they must have been obliterated long before 1780⅝ when the entry in question was made. With,respect to the girdled trees, it seems that they were so ineffectually cut that none ©f them died, and that the wounds had healed úp and become so obscure as not to be discovered by the only white person who, after the improvement ivas made in 1773, appears to have been at this place as early as 1780; nor by others who seern the most recently afterwards to have visited the lick, some of whom went for the purpose of searching for the objects called for in the entry, which they had with them for their guide. The clear conviction of the mind, from the testimony on this point, is that it would have required more than ordinary diligence to have found the girdled trees, and recognised them as fitting the call for an improvement of deadened trees.
Call for “ a creek,” is not responded by a Tick M the creek.
With respect to notice to the subsequent locator, it ⅛ the same whether the objects do not exist or cannot be found upon reasonable search. T he nonentity or the invisibility of the objects, must therefore equally affect the validity of the entry ; for “ tie ;non apparentibus ef non existentibus eadem est ratio”
So far, therefore, are the calls for the marked and deadened trees from adding strength to this claim, that by the obliteration and obscurity of the objects, they tend to weaken the entry, inasmuch as they are calculated to beguile and mislead, instead of informing the subsequent locator.
Thq only remaining call upon which the entry in. question depends for support, is for “ a salt lick on the same (that is, the west) side of the creek”
The lick claimed as the one called far, is on the quick in the channel of the stream, some distance from the west bank, but nigher it than the other ; and it appears that a small rise in the stream overflows it an¿ renders it invisible.
It is abundantly proven that salt water exists in many places on Sandy, from near the mouth to the lick now .claimed, which like it makes its appearance on the quick satd ia the channel of the river, sometimes approaching *147 the east and sometimes the west bank. Some of these places, near the west side, correspond better with the distance described in. the entry from the mouth of the stream, than the one claimed under the location.
An objectap. Peal<:d to as lo^describe* or charaiterized, ** to diftmguish. ⅛ ⅛ ⅛⅜ and known a* one inten* ⅛. 138, ⅜ ,
Under such circumstances, the call under consideration is deemed too vague and indefinite to give validity to the entry.
Independent oí the marked and deadened trees, which, from their nonentity or .obscurity at the time of making the entry, can impart no strength to the claim, the call for the lick gives no characteristic marks by which it maybe distinguished. A lick of any size, whether great or little, will equally answer the call. Indeed if there were any distinguishing attributes peculiar to the lick contended for, they would furnish a presumption that it .was not the lick intended to be indicated by the location, otherwise it would hays been described by those attributes. Considering it as having no properties which would, better than those of other licks on the west side of, the stream, correspond with the call in the entry, and it necessarily results that the call is essentially vague and uncertain. Added to these> considerations are the circumstances that the lick claims ed is in the channel of the stream, and with a small rise is overflown ; whereas the call is for a lick on the west side of the creek, and would be sought for by subsequent locators on the bank, and not in the channel of tha stream.
The other calls in the entry, as they are dependant upon those already considered, or regard the manner of surveying only, need not be considered.
\\ nether, therefore, we advert to the general d«$-cription or the locative calls of the entry in question, we find that it wants that specialty and precision which the law and the long established principles of adjudication , ⅛pen Lind claims require.
Decree affirmed, with costs.